106 F.3d 1158
 154 L.R.R.M. (BNA) 2481, 65 USLW 2565
 UNITED STATES DEPARTMENT OF ENERGY, Morgantown Energy
Technology Center, Morgantown, West Virginia, Petitioners,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
American Federation of Government Employees, Local 1995,
AFL-CIO, Intervenor.
FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,
v.
UNITED STATES DEPARTMENT OF ENERGY, Morgantown Energy
Technology Center, Morgantown, West Virginia, Respondents.
 Nos. 95-2949, 95-3113.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 27, 1996.
Decided Feb. 13, 1997.
 
 ARGUED: William Kanter, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C., for Petitioner. David Michael Smith, Solicitor, Federal Labor Relations Authority, Washington, D.C., for Respondent. Kevin Michael Grile, Assistant General Counsel, American Federation of Government Employees, AFL-CIO, Chicago, IL, for Intervenor. ON BRIEF: Frank W. Hunger, Assistant Attorney General, John F. Daly, Ellen D. Katz, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C., for Petitioner. James F. Blandford, Federal Labor Relations Authority, Washington, D.C., for Respondent. Mark D. Roth, General Counsel, Charles A. Hobbie, Deputy General Counsel, American Federation of Government Employees, AFL-CIO, Washington, D.C., for Intervenor.
 Before WILKINS, LUTTIG, and WILLIAMS, Circuit Judges.
 Enforcement denied by published opinion. Judge WILKINS wrote the majority opinion, in which Judge WILLIAMS joined. Judge LUTTIG wrote an opinion concurring in the judgment.
 OPINION
 WILKINS, Circuit Judge:
 
 
 1
 The United States Department of Energy (the Department) petitions for review of a decision and order of the Federal Labor Relations Authority (the Authority) that concluded that the Department violated the Federal Service Labor-Management Relations Act (FSLMRA), 5 U.S.C.A. §§ 7101-7135 (West 1996). The Authority held that the violation occurred when the Department disapproved of a clause in a collective bargaining agreement that would have required midterm bargaining regarding union-initiated proposals not included in or covered by the collective bargaining agreement. The Authority cross-petitions for enforcement of its decision and order.[1] We hold that the Department is not required to bargain with respect to the provision and therefore deny enforcement of the decision and order of the Authority.
 
 I.
 A.
 
 2
 The FSLMRA establishes a comprehensive set of rules governing collective bargaining between federal-sector employers and employees. See U.S. Department of Health & Human Servs. v. FLRA, 844 F.2d 1087, 1088-89 (4th Cir.1988) (en banc) [hereinafter HHS ]. Like their counterparts in the private sector, federal agencies and unions have a duty to "meet and negotiate in good faith for the purposes of arriving at a collective bargaining agreement." 5 U.S.C.A. § 7114(a)(4). This duty to bargain generally includes all "condition[s] of employment" except those explicitly exempted by the FSLMRA. See 5 U.S.C.A. § 7114(b)(2); Nuclear Regulatory Comm'n v. FLRA, 895 F.2d 152, 154 (4th Cir.1990) [hereinafter NRC ].[2] However, the duty to negotiate "exists only 'to the extent not inconsistent with any Federal law or any Government-wide rule or regulation.' " NRC, 895 F.2d at 154 (quoting 5 U.S.C.A. § 7117(a)(1)).[3] Failure to negotiate in good faith is an unfair labor practice. See 5 U.S.C.A. § 7116(a)(5), (b)(5).
 
 
 3
 In addition, the duty to negotiate "does more than simply require an agency to negotiate; it subjects the agency to the possibility that the proposal will become binding." HHS, 844 F.2d at 1089. If good faith negotiations fail, the FSLMRA provides for the resolution of the impasse by the Federal Services Impasses Panel (the Impasses Panel), which is vested with the authority to impose negotiable proposals on the parties. See 5 U.S.C.A. § 7119(c)(5)(B), (C); Department of Defense, Office of Dependents Sch. v. FLRA, 879 F.2d 1220, 1222 (4th Cir.1989). But, the Impasses Panel does not possess the authority to impose terms that are inconsistent with the FSLMRA or any other federal law. See id. Accordingly, the head of an agency may disapprove of a term imposed upon the agency by the Impasses Panel pursuant to 5 U.S.C.A. § 7114(c)(1) on the basis that the term is not consistent with applicable law, i.e., is nonnegotiable. See id.; American Fed'n of Gov't Employees v. FLRA, 778 F.2d 850, 856-57 (D.C.Cir.1985).[4] If the agency disapproves of a provision included in a collective bargaining agreement by order of the Impasses Panel, the union, in response, may either seek a negotiability determination by the Authority under 5 U.S.C.A. § 7117(c)(1) or may file an unfair labor practices charge against the agency pursuant to 5 U.S.C.A. § 7118.[5] See Department of Defense Dependents Sch., Alexandria, Va. v. FLRA, 852 F.2d 779, 784 (4th Cir.1988); American Fed'n of Gov't Employees, 778 F.2d at 855-56. In either case, the Authority must determine whether the provision in question is consistent with the FSLMRA or other applicable law.
 
 B.
 
 4
 The material facts are not in dispute. The Department employs approximately 200 union workers at the Morgantown Energy Technology Center (METC) in Morgantown, West Virginia. The American Federation of Government Employees, Local 1995, AFL-CIO (the Union) is the certified exclusive representative of METC employees for collective bargaining purposes. See 5 U.S.C.A. § 7114(a)(1).
 
 
 5
 METC and the Union are parties to a collective bargaining agreement. During negotiations for a successor agreement, the Union proposed the following "reopener" clause:
 
 
 6
 The Employer will be obligated to bargain in good faith on any Union-proposed changes in conditions of employment during the term of this agreement as long as the subject of any specific proposal is not controlled by this agreement and as long as the Union has not clearly and unmistakably waived bargaining over all proposals.
 
 
 7
 J.A. 6. METC and the Union failed to agree on the inclusion of this language in the successor agreement; consequently, the Union requested assistance from the Impasses Panel. Rejecting METC's contention that the proposal was nonnegotiable, the Impasses Panel concluded that the Union had a statutory right under the FSLMRA to initiate midterm bargaining and that the failure to include a midterm bargaining provision in the collective bargaining agreement could be construed as a waiver by the Union of its statutory right.[6] Accordingly, the Impasses Panel directed the parties to adopt a modified version of the Union's proposed language:
 
 
 8
 The Employer will be obligated to bargain in good faith on any negotiable Union-initiated proposals concerning matters that are not contained in or covered by the collective-bargaining agreement, unless the Union has waived its right to bargain about the subject matter involved.
 
 J.A. 8.[7]
 
 9
 Subsequently, the Director of Personnel for the Department disapproved the collective bargaining agreement, see 5 U.S.C.A. § 7114(c), on the basis that midterm bargaining would create a system of rolling bargaining and result in endless negotiation in contravention of the express aim of the FSLMRA to foster effective and efficient government, see 5 U.S.C.A. § 7101(a)(1)(B), (2).
 
 
 10
 In response, the Union filed unfair labor practice charges with the Authority, contending that the Department, by disapproving of the language included in the collective bargaining agreement by order of the Impasses Panel, impermissibly interfered with the collective bargaining relationship in violation of 5 U.S.C.A. § 7116(a)(1), (5). The Union also asserted that the Department failed to cooperate in impasse procedures in violation of 5 U.S.C.A. § 7116(a)(1), (6). Relying on Social Security Administration v. FLRA, 956 F.2d 1280, 1281 (4th Cir.1992) [hereinafter SSA ], the Department argued that its disapproval of the reopener clause was justified because the language imposed by the Impasses Panel was not consistent with applicable law and would frustrate the purpose of the FSLMRA to foster "effective and efficient" government and would create unstable labor relations. The Authority rejected the Department's argument, determining that SSA addressed only the issue of whether an agency has a statutory duty to engage in midterm bargaining over union-initiated proposals, leaving open the question of whether such provisions are negotiable. See Department of Energy, Washington, D.C., 51 F.L.R.A. 124, 127 (1995).[8] The Authority then determined that the reopener clause was not inconsistent with the FSLMRA or any other law and thus was negotiable. See id. at 128-29.
 
 
 11
 Having concluded the provision was negotiable, the Authority determined that the Department had failed to cooperate with the decision of the Impasses Panel in violation of 5 U.S.C.A. § 7116(a)(1), (6). See id. at 130. Additionally, the Authority ruled that the Department unlawfully interfered with the collective bargaining process between METC and the Union in violation of 5 U.S.C.A. § 7116(a)(1), (5). See id. The Authority ordered the Department to rescind its disapproval of the provision imposed by the Impasses Panel and to direct METC to incorporate the reopener clause into the collective bargaining agreement. See id. at 130-31.
 
 II.
 A.
 
 12
 We will set aside a decision of the Authority if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C.A. § 706(2)(A) (West 1996); see Bureau of Alcohol, Tobacco & Firearms v. FLRA, 464 U.S. 89, 97 n. 7, 104 S.Ct. 439, 444 n. 7, 78 L.Ed.2d 195 (1983). Although "the Authority is entitled to considerable deference when it exercises its special function of applying the general provisions of the [FSLMRA] to the complexities of federal labor relations," reviewing courts "must not rubber-stamp ... administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." Id. at 97, 104 S.Ct. at 444 (internal quotation marks omitted) (second alteration in original). When a decision of the Authority undermines congressional intent with respect to the FSLMRA, it should not be enforced. See HHS, 844 F.2d at 1090. Mindful of these principles, we consider whether the decision and order of the Authority requiring the Department to rescind its disapproval of the reopener clause is arbitrary, capricious, an abuse of discretion, or is not in accordance with law.
 
 B.
 
 13
 The parties agree that the sole issue before us is whether a clause that requires an agency to bargain midterm with respect to union-initiated proposals is inconsistent with federal law and therefore is not negotiable. See 5 U.S.C.A. § 7117(a)(1); U.S. Nuclear Regulatory Comm'n, Washington, D.C. v. FLRA, 25 F.3d 229, 231 (4th Cir.1994). Relying on SSA, the Department contends that a midterm bargaining proposal is nonnegotiable because midterm bargaining contravenes the language, express statutory purpose, and legislative history of the FSLMRA. The Authority and the Union argue that SSA leaves open the question of whether such a provision is negotiable. Further, the Authority and the Union assert that the reopener clause is not inconsistent with federal law--and therefore is negotiable--because it does not run afoul of any specific statutory provision.
 
 
 14
 Our reasoning in SSA compels the conclusion that a clause requiring an agency to engage in union-initiated midterm bargaining is inconsistent with the FSLMRA and, consequently, is not negotiable. In SSA, we held that "union-initiated midterm bargaining is not required by the [FSLMRA] and would undermine the congressional policies underlying the statute." SSA, 956 F.2d at 1281 (emphasis added). Such bargaining is at odds with the language of the FSLMRA, which "contemplate[s] that [the duty to bargain] arises as to only one, basic agreement." Id. at 1284; see 5 U.S.C.A. § 7114(a)(4) (requiring agency and union to meet and negotiate "for the purposes of arriving at a collective bargaining agreement ") (emphasis added); see also 5 U.S.C.A. § 7114(b)(1) (referring to a single collective bargaining agreement); 5 U.S.C.A. § 7114(b)(5) (directing parties "to implement such agreement"). Moreover, SSA makes clear that union-initiated midterm bargaining would frustrate the express purpose of the FSLMRA to foster stability and an effective and efficient government by resulting in "seriatim" bargaining. SSA, 956 F.2d at 1288. Such a piecemeal approach to collective bargaining in the federal sector would not encourage parties to "foresee potential labor-management relations issues[ ] and resolve those issues in as comprehensive a manner as practicable." Id. (internal quotation marks omitted).
 
 
 15
 The Authority and the Union counter that SSA does not control this case because SSA addressed only the statutory duty of an agency to engage in midterm bargaining, leaving open the issue of the negotiability of a contractual provision requiring union-initiated midterm bargaining. We agree that the question of whether the FSLMRA imposes a statutory duty differs from the question of whether an agency must negotiate with a union regarding the inclusion of a clause in a collective bargaining agreement. Under the present circumstances, however, this distinction is more apparent than real.
 
 
 16
 We concluded in SSA that not only is union-initiated midterm bargaining not mandated by the FSLMRA, but also that it is contrary to the FSLMRA. See id. at 1281. Accordingly, the Department properly disapproved of the clause. See Department of Defense, Office of Dependents Sch., 879 F.2d at 1222 ("[A]n agency head may disapprove a collective bargaining agreement, even if panel-imposed, by determining it to be not 'in accordance with the provisions of [the FSLMRA] ....' " (citation omitted) (quoting 5 U.S.C. § 7114(c)(2))). Furthermore, were we to find this type of provision negotiable, we would effectively vitiate SSA. Because the Impasses Panel adheres to the position of the Authority that the Department has a statutory duty to engage in midterm bargaining, we cannot envision a case in which the Impasses Panel would fail to impose upon an agency a midterm bargaining clause like the one before us. Indeed, the Authority has consistently found that a bargaining proposal that simply restates a statutory bargaining obligation is negotiable. See, e.g., National Fed'n of Fed. Employees Local 405, 42 F.L.R.A. 1112, 1135-36 (1991). Thus, a union could circumvent SSA by the mere expedient of negotiating to impasse on a midterm bargaining provision, essentially requiring an agency to bargain midterm over union proposals despite our determination that such a requirement is contrary to the FSLMRA.
 
 
 17
 We also reject the contention of the Authority and the Union that the clause is negotiable because it does not contravene a specific statutory provision. The duty to bargain does not include proposals that trench upon matters specifically addressed by a federal statutory provision or matters that are inconsistent with federal law. See NRC, 895 F.2d at 154. These are two separate limitations on the duty to negotiate, requiring us to determine whether the proposal at issue involves "matters specifically provided for by Federal statute, or more generally, ... [matters that] are inconsistent with any Federal law." Department of Defense v. FLRA, 685 F.2d 641, 648 (D.C.Cir.1982) (citations and internal quotation marks omitted) (emphasis added); accord NRC, 895 F.2d at 154. Thus, the duty of the Department to negotiate clearly does not extend to matters that are inconsistent with a federal statute, even if there is no specific statutory provision that prohibits the bargaining proposal. Otherwise, a party could negotiate to impasse a proposal that, as in the case before us, is at odds with the policies underlying a statute and is wholly contrary to congressional intent.[9]
 
 III.
 
 18
 For the foregoing reasons, we conclude that the Department is not required to negotiate with the Union regarding a clause that mandates union-initiated midterm bargaining and accordingly that the Department properly disapproved of the reopener clause. Because the decision of the Authority is not in accordance with law, we grant the Department's petition for review and deny the Authority's cross-application for enforcement.
 
 
 19
 ENFORCEMENT DENIED.
 
 
 20
 LUTTIG, Circuit Judge, concurring in the judgment:
 
 
 21
 I cannot join the opinion of the Court. Nonetheless, for the reasons set forth below, I, too, deny enforcement of the Federal Labor Relations Authority's order.
 
 
 22
 In the opinion of the Authority under review, the Authority expressly refused to follow our Circuit's precedent in Social Security Administration v. FLRA, 956 F.2d 1280 (4th Cir.1992) ("SSA "), and, instead, as the opinion states, followed the District of Columbia Circuit's decision in NTEU v. FLRA, 810 F.2d 295 (D.C.Cir.1987). See J.A. at 29, 32 and n. 4.*
 
 
 23
 When the Court requested post-argument briefing on the FLRA's position that it is not bound by the law of this Circuit, the FLRA responded that, under the venue provision of the Federal Labor-Management Relations Act, 5 U.S.C. § 7123, "it is impossible for the Authority to achieve total consistency between its ruling and [differing rulings] of the courts of appeals." See Letter from David M. Smith, Solicitor, Federal Labor Relations Authority, to Bert M. Montague, Clerk of Court (Oct. 2, 1996) (copy attached). Pursuant to section 7123, the Authority explained, a party aggrieved by a decision of the Authority may file its appeal in either the District of Columbia Circuit or the circuit in which the aggrieved party resides or transacts business, and, consequently, the Authority does not know at the time it makes its decision in which circuit its decision will be reviewed. When deciding its cases, therefore, the agency simply chooses that law which it prefers from among the conflicting circuit precedents.
 
 
 24
 The Court also requested that the Solicitor General of the United States be informed of the position being taken by the FLRA with respect to this Court's opinions. Following notification of the FLRA's position, the Department of Justice's Appellate Staff filed with the Court a letter in which it expressed its support for the FLRA's position, representing that that support is shared by Acting Solicitor General Dellinger. See Letter from William Kanter, Deputy Director, Civil Division Appellate Staff, to Patricia S. Connor, Clerk of Court (Nov. 14, 1996) (copy attached). In that letter, the Department's Civil Division took the position that federal agencies are never bound by the principles of law set forth in the opinions of this Court, even where no multiple-venue provision obtains and even in matters arising within the jurisdiction of this Circuit. Wrote Mr. Kanter:
 
 
 25
 Even where there is no multiple-venue provision, we do not believe that there is any constitutional requirement or any other inflexible rule that a federal agency must apply the legal principles announced in a court of appeals decision to the administration of a statutory program, either generally or in matters arising in the particular circuit.
 
 
 26
 Id. at 2 n. 1 (emphasis added). Mr. Kanter continued with the surprising assertion that agencies of the Executive Branch, when they do choose to abide by the law of this Court, do so only "as a matter of policy and comity." Id.
 
 
 27
 I appreciate the precarious position in which the FLRA finds itself by virtue of the multiple-venue provision of section 7123 when it first adjudicates a dispute. Indeed, recognizing the awkwardness, I cannot fault the agency for taking the position that, at the adjudicatory stage of its proceedings, it may follow that caselaw which it prefers. However, I cannot, and do not, accept the Department of Justice's and the agency's quite different, and, in my view, extraordinary, position that, even absent a multiple-venue provision and even outside the context of a particular litigation, the agency is not bound by the principles of law set forth in the opinions of this Court "in matters arising in [this] particular circuit." In my judgment, in such contexts, every federal agency, including the FLRA, is required to abide by the law of this Circuit in matters arising within the jurisdiction of this Court, until and unless it is changed by this Court or reversed by the Supreme Court of the United States. See, e.g., Hyatt v. Heckler, 807 F.2d 376, 379 (4th Cir.1986); Anderson v. Heckler, 756 F.2d 1011, 1013 (4th Cir.1985); Lopez v. Heckler, 713 F.2d 1432, 1438 (9th Cir.1983)(order denying stay), stay granted, 463 U.S. 1328, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983), motion to vacate stay denied, 464 U.S. 879, 104 S.Ct. 221, 78 L.Ed.2d 217 (1983); Jones & Laughlin Steel Corp. v. Marshall, 636 F.2d 32, 33 (3d Cir.1980); ITT World Communications v. FCC, 635 F.2d 32, 43 (2d Cir.1980); Ithaca College v. NLRB, 623 F.2d 224, 228 (2d Cir.1980); Mary Thompson Hosp., Inc. v. NLRB, 621 F.2d 858, 864 (7th Cir.1980). Were it otherwise, federal agencies would be subject to no law at all--as, indeed, it appears they believe to be the case.
 
 
 28
 Neither United States v. Mendoza, 464 U.S. 154, 162, 104 S.Ct. 568, 573, 78 L.Ed.2d 379 (1984), nor United States v. Estate of Donnelly, 397 U.S. 286, 294-295, 90 S.Ct. 1033, 1038-1039, 25 L.Ed.2d 312 (1970), which the United States would have us believe support its extraordinary assertion, see Kanter Letter at 2 n. 1, is to the contrary. In Mendoza, the Court simply disapproved the use of nonmutual collateral estoppel against the government. That is, the decision held only that a party who was not a party to a prior litigation may not collaterally estop the government in subsequent litigation from rearguing the issue that was adversely decided against the government in the prior litigation. Mendoza says nothing at all as to whether the government is bound, in matters arising within a particular circuit, by that circuit's precedent between the time when an issue is decided adversely to the government and the time of a subsequent action. In any event, not only does the Department of Energy here not attempt to invoke collateral estoppel against the FLRA, but all four parties in this litigation and in Social Security Administration v. FLRA are, in my view, the same--the United States Government. Accordingly, nonmutual collateral estoppel has no application whatsoever.
 
 
 29
 Estate of Donnelly likewise is of no relevance in this case. There, the Court merely held that the United States could not be penalized for, or "deprive[d] ... of the fruits of," see 397 U.S. at 293-94, 90 S.Ct. at 1037-38, acting in accordance with what the Court itself subsequently held was the correct interpretation of a federal statute governing the filing of tax lien notices, an interpretation which had been rejected by the court of appeals. The Court did not so much as comment on whether the United States was, or had been, bound by the court of appeals' interpretation of the statute during the period between issuance of the opinion and the action at issue in Estate of Donnelly. Moreover, the statute at issue in Estate of Donnelly was not one which was regularly applied by the government in its dealings with other parties. The statute governed the filing of federal tax lien notices; the only consequence of the government's failure to abide by the court of appeals' interpretation of the statute was that the government risked the possibility that, at such time as it sought to enforce a lien, it would be barred from doing so under the established law in the circuit.
 
 
 30
 In any event, regardless of the precariousness of the FLRA's position (because of the multiple-venue provision of section 7123) when it originally adjudicates a dispute, and regardless of whether the agency is bound to apply the law of this Circuit in matters arising within this Circuit following an adverse decision or is bound by one of our prior decisions when before this Court, I, as a judge of this Court, am bound by the prior decisions of this Court. I am not free, as the agency believes it is, to conduct myself unconstrained by law. Nor am I, as the Authority is, subject to any kind of multiple-venue provision; I am bound by the law of but one circuit. Therefore, when faced with an agency decision in which the agency expressly refuses to follow the law of this Circuit, I can conclude only that that decision is arbitrary, capricious and inconsistent with law, cf. SEC v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 ("[I]f the action is based upon a determination of law as to which the reviewing authority of the courts does come into play, an order may not stand if the agency has misconceived the law."); Prill v. NLRB, 755 F.2d 941, 947-48 (D.C.Cir.1985), just as I am bound to hold that a district court abuses its discretion when it applies the incorrect law, see, e.g., PPG Industries v. NLRB, 671 F.2d 817, 823 n. 9 (4th Cir.1982) ("We cannot ... defer to a legal determination which flouts our previous statements on the law.... It is the duty of the NLRB to apply the law of the Circuit."). In other words, although it may arguably be defensible, at least in the first instance, that the agency chooses not to apply the law of this Court, that understandable choice does not affect my obligation to judge the agency's action under the laws of this Circuit. And, given that the agency did not apply the law of this Circuit, its decision is, ipso facto, "not in accordance with law." For this reason alone, I concur in the judgment of the court denying enforcement of the FLRA's decision.
 
 ATTACHMENT
 UNITED STATES OF AMERICA
 FEDERAL LABOR RELATIONS AUTHORITY
 WASHINGTON, DC 20424
 OFFICE OF THE SOLICITOR
 October 2, 1996
 Bert M. Montague
 Clerk
 United States Court of Appeals
 
 31
 for the Fourth Circuit
 
 1100 E. Main Street
 U.S. Court House Annex
 Richmond, Virginia 23219
 
 32
 Re: United States Dep't of Energy v. FLRA, No. 95-2949 (argued Sept. 27, 1996)
 
 Dear Mr. Montague:
 
 33
 At oral argument in the above-captioned case, the panel requested that I provide a letter to the Court explaining the basis for the notation, in the decision under review, that the Authority "has respectfully declined to follow the Fourth Circuit's decision [in SSA v. FLRA, 956 F.2d 1280 (4th Cir.1992) (SSA ) ]" (JA at 32 n. 4). In SSA, this Court found that an agency does not violate the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101-7135 (Statute), by refusing to bargain over union-initiated proposals during the term of a collective bargaining agreement. As reflected in this and other decisions, the Authority has, since 1987, instead followed the contrary holding of the United States Court of Appeals for the District of Columbia Circuit in NTEU v. FLRA, 810 F.2d 295 (D.C.Cir.1987) (NTEU ).
 
 
 34
 It is important to clarify at the outset the relationship between SSA and the instant case. The decision on review in this case does not rely on the Authority's determination not to follow this Court's holding in SSA. The Authority decided in this case that a collective bargaining proposal obliging an agency to bargain midterm over certain union-initiated proposals is not inconsistent with any Federal law or Government-wide rule or regulation. As we have argued (Br. 23-24), this holding, ultimately concerning the parties' bargaining obligations, is independent of and not inharmonious with SSA 's determination that there is no statutory requirement to bargain midterm. Our consistent position has been and continues to be that any decision by the Court in this case is not controlled by this Circuit's determination in SSA. Accordingly, in its cross petition for enforcement, the Authority has not requested or suggested that this Court contravene its earlier precedent.
 
 
 35
 However, even were the case presently before the Court factually and legally indistinguishable from the matter decided in SSA, the unpredictable venue provision contained in section 7123 of the Statute would make it impossible for the Authority to achieve total consistency between its ruling and those of the courts of appeals. Section 7123(a) provides that a person aggrieved by a final order of the Authority may "institute an action for judicial review of the Authority's order in the United States court of appeals in the circuit in which the person resides or transacts business or in the United States Court of Appeals for the District of Columbia." Were the Authority, in a case on all fours with SSA, to apply this Circuit's SSA decision, the aggrieved union could seek judicial review in the District of Columbia Circuit claiming, accurately, that the Authority had failed to comply with that Circuit's NTEU determination. If, on the other hand, the Authority followed and applied the District of Columbia's NTEU ruling, the Federal agency involved, which presumably "transacts business" nationwide, could seek review in the Fourth Circuit, where the Authority's decision would be at variance with this Circuit's SSA case. In sum, if faced with such an indistinguishable dispute, the Authority would not be able, at the time of the issuance of its decision and order, to predict whether or where its order would be reviewed. Moreover, if judicial review were sought in either the District of Columbia or Fourth Circuit, the Authority, irrespective of the course chosen, would find itself in the position of not complying with a previous decision of a United States Court of Appeals.
 
 
 36
 The interest in a national, uniformly administered Federal labor-management relations program is undercut by the potential described in the preceding paragraph where the party aggrieved by the Authority's decision will inevitably prevail through judicial forum shopping. As a result, when the Authority has faced such a scenario, consideration has been given to proactive approaches such as petitioning the Supreme Court for certiorari or preemptively seeking enforcement in other circuits in an effort to clarify and develop the law on certain issues. This latter approach was recently invoked by the Authority in FLRA v. NASA, No. 95-9010, (11th Cir., application for enforcement filed July 31, 1995) where the Authority adjudicated a case involving an issue previously decided differently by the Third and District of Columbia Circuits. The Supreme Court has noted that the process of litigation of the same issue in multiple forums, rather than appeal, serves the interest of developing better legal doctrine. United States v. Mendoza, 464 U.S. 154, 163, 104 S.Ct. 568, 574, 78 L.Ed.2d 379 (1984).
 
 
 37
 Had the case before the Court involved the issue previously decided by this and the District of Columbia Circuit, the Authority would have contemplated an enforcement strategy in a circuit other than the Fourth. As this case was not inconsistent with SSA, the Authority was content to issue its decision and, if judicial review was sought, litigate the merits of the decision regardless of the forum chosen by the aggrieved party.
 
 
 38
 Thank you for providing me the opportunity to advise the Court of the Authority's position concerning this matter. In accordance with the Court's direction, a copy of this letter is being sent to the Solicitor General of the United States.
 
 
 39
 Sincerely,
 
 David M. Smith
 Solicitor
 Copy Furnished:
 
 40
 Walter Dellinger, Esq.
 
 Acting Solicitor General
 
 41
 William Kanter, Esq.
 
 Appellate Staff, DOJ
 
 42
 Kevin Grile, Esq.
 
 AFGE
 U.S. Department of Justice
 WKanter
 
 43
 (202) 514-4575
 
 145-192-602
 Washington, D.C. 20530
 November 14, 1996
 Ms. Patricia S. Connor
 Clerk, United States Court of Appeals
 
 44
 for the Fourth Circuit
 
 Fifth Floor
 1100 East Main Street
 Richmond, VA 23219
 Re: U.S. Department of Energy v. FLRA
 No. 95-2949
 Dear Ms. Connor:
 
 45
 I am writing to respond to the letter dated October 2, 1996 from the Solicitor of the FLRA, David M. Smith. In his letter, which was written at the request of the Court, the Solicitor explains why the FLRA does not follow this Court's holding in SSA v. FLRA, 956 F.2d 1280 (4th Cir.1992), and more generally why the FLRA at times does not follow seemingly controlling circuit precedent.
 
 
 46
 As Mr. Smith's letter makes clear, the statute's venue provision, 5 U.S.C. 7123, is such that the FLRA cannot know, at the time it adjudicates a dispute, which court of appeals will review its decision. This same consideration has led the NLRB, whose venue provision is quite similar to 5 U.S.C. 7123, to state that "[i]t is thus apparent that we operate under a statute that simply does not contemplate that the law of a single circuit would exclusively apply in any given case." Arvin Automotive, 285 NLRB 753, 757, 1987 WL 89885 (1987). See also Estreicher and Revesz, Nonacquiescence By Federal Administrative Agencies, 98 Yale L.J. 679, 709 (1989).[1]
 
 
 47
 Especially in view of this venue uncertainty, we agree with the FLRA that it was not bound to follow the SSA decision at the administrative phase of this case. That said, however, Fourth Circuit law does provide the rule of decision in cases reviewing FLRA action in this Court. In this case, we cannot agree with the FLRA that the Court can affirm the FLRA's decision as consistent with SSA. On the contrary, the FLRA imposed on the Department of Energy a contract provision requiring the very broad scope of midterm bargaining that this Court held in SSA "would * * * contravene many of the basic purposes of the FSLMRS" and would be "inconsistent with [the] statutory mandate [and] frustrate[ ] the congressional policy underlying [the] statute." (Citations and quotation marks omitted). 956 F.2d at 1288, 1290. Thus, we think SSA very clearly calls for reversal of the FLRA decision in this case.
 
 
 48
 We are authorized to state that the Acting Solicitor General, who received a copy of Mr. Smith's letter at the direction of the Court, agrees with the positions taken in this letter.
 
 
 49
 I am enclosing an original and three copies of the letter for the Court, and a copy is today being mailed to each counsel listed below.
 
 
 50
 Yours very truly,
 
 William Kanter
 Deputy Director, Appellate Staff
 Civil Division
 ATTACHMENT
 
 51
 cc: David M. Smith, Solicitor
 
 Federal Labor Relations Authority
 607 14th St., N.W. Suite 222
 Washington, D.C. 20424
 Mark D. Roth, Esquire
 
 52
 American Federation of Government Employees
 
 
 53
 80 F St., N.W.
 
 Washington, D.C. 20001
 Kevin Grile, Esquire
 
 54
 American Federation of Government Employees
 
 449 North Clark St. Room 300
 Chicago, Illinois 60621
 
 
 [1]
 The American Federation of Government Employees, Local 1995, intervenes on behalf of the Authority, seeking enforcement of the order
 
 
 [2]
 The statute defines "conditions of employment" as "personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, affecting working conditions." 5 U.S.C.A. § 7103(a)(14). A federal agency has no duty to negotiate over policies, practices or matters that are specifically provided for by federal statute. See 5 U.S.C.A. § 7103(a)(14)(C); NRC, 895 F.2d at 154. Likewise, an agency has no duty to bargain with respect to matters that relate to prohibited political activities under 5 U.S.C.A. § 7103(a)(14)(A) or that involve the classification of any position under 5 U.S.C.A. § 7103(a)(14)(B). See Library of Congress v. FLRA, 699 F.2d 1280, 1284 n. 16 (D.C.Cir.1983)
 
 
 [3]
 Other matters expressly excepted from the scope of the duty of an agency to bargain include those that are reserved to management under the management rights clause contained in 5 U.S.C.A. § 7106(a) or that conflict with an agency rule or regulation for which a compelling need exists pursuant to 5 U.S.C.A. § 7117(a)(2). See Library of Congress, 699 F.2d at 1284 n. 16
 
 
 [4]
 Disapproval of a provision in a collective bargaining agreement by the head of an agency is essentially "an allegation of nonnegotiability under § 7117(c)." American Fed'n of Gov't Employees, 778 F.2d at 857
 
 
 [5]
 If the Authority concludes that the provision imposed by the Impasses Panel is not inconsistent with law, disapproval of the provision by the agency head amounts to a failure to cooperate in impasse procedures. See American Fed'n of Gov't Employees, 778 F.2d at 856. Failure to cooperate in impasse procedures or decisions of the Impasses Panel constitutes an unfair labor practice. See 5 U.S.C.A. § 7116(a)(6), (b)(6)
 
 
 [6]
 The proposition that the FSLMRA creates a statutory obligation for agencies to engage in midterm bargaining regarding union-initiated proposals is directly contrary to the law of this circuit. See Social Security Admin. v. FLRA, 956 F.2d 1280, 1281 (4th Cir.1992). In reaching its decision, however, the Impasses Panel noted that it is bound by rulings of the Authority and that the Authority chooses not to follow our holding. Rather, the Authority adheres to National Treasury Employees Union v. FLRA, 810 F.2d 295, 301 (D.C.Cir.1987), which reaches the contrary conclusion that federal employers are statutorily obligated to bargain midterm over union proposals. See Internal Revenue Serv., 29 F.L.R.A. 162, 164-66 (1987)
 
 
 [7]
 The Impasses Panel modified the reopener clause because it found the proposed language to be ambiguous
 
 
 [8]
 The Authority explained in its order that it declines to follow our decision in SSA as binding precedent in any case. See Department of Energy, Washington, D.C., 51 F.L.R.A. at 127 n. 4. An agency generally must "follow the law of the circuit whose courts have jurisdiction over the cause of action." Hyatt v. Heckler, 807 F.2d 376, 379 (4th Cir.1986). Here, however, the venue provision of the FSLMRA is such that the Authority cannot know which circuit court of appeals will review its decision. See 5 U.S.C.A. § 7123(a) (allowing a "person aggrieved by any final order of the Authority" to seek review in the "court of appeals in the circuit in which the person resides or transacts business" or in the Court of Appeals for the District of Columbia Circuit). Thus, although "[w]e cannot ... defer to a legal determination which flouts our previous statements on the law," PPG Indus., Inc. v. NLRB, 671 F.2d 817, 823 n. 9 (4th Cir.1982), we recognize that the Authority is in a difficult position when the circuit courts of appeals that may review its decisions have reached differing conclusions, see Johnson v. United States R.R. Retirement Bd., 969 F.2d 1082, 1091 (D.C.Cir.1992) (noting that nonacquiescence may result when "a broad venue statute ... forces the agency to act without knowing which circuit court [of appeals] ultimately will review its actions")
 
 
 [9]
 The Union argues finally that midterm bargaining does not produce the ills identified in SSA. Specifically, the Union contends that union-initiated midterm bargaining does not lead to the dispersal or manipulation of the bargaining process and, therefore, is not inconsistent with the FSLMRA. Moreover, the Union asserts that adoption of the Department's position would actually frustrate the statutory policy of fostering an effective and efficient government. See 5 U.S.C.A. § 7101(b). We reject these arguments, each having been considered and dismissed in SSA. See SSA, 956 F.2d at 1287 (observing that "[a] union can gain a tactical advantage by negotiating--and then arbitrating--issues seriatim rather than as a unified package"); id. at 1288 (explaining that "[u]nion-initiated midterm bargaining risks serious interference" with the "paramount right of the public to as effective and efficient a Government as possible") (internal quotation marks omitted); id. (noting that "midterm bargaining would encourage dispersal of the collective bargaining process") (internal quotation marks omitted). We decline to address the Union's suggestion that SSA was wrongly decided. SSA is the law in this circuit until it is overruled by the en banc court or superseded by a decision of the Supreme Court. See Chisolm v. Transouth Fin. Corp., 95 F.3d 331, 337 n. 7 (4th Cir.1996)
 
 
 *
 In the course of its opinion, the Authority notes its belief that its resolution of the case is not inconsistent with our opinion in SSA because, in that opinion, we addressed only whether mid-term collective bargaining is required by the Federal Service Labor-Management Relations Act. Indeed, the Authority goes so far as to say that it would have reached the same conclusion in this case even were it to agree with the decision in SSA. See J.A. at 29, 32 and n. 4. Aware that its case could ultimately be reviewed in this Court, it was strategically wise for the Authority to attempt to "cover" itself in this way. That it thought to do so, however, in no way alters the fact that the Authority did not apply the law of this Circuit in reaching its decision
 
 
 [1]
 We recognize that in PPG Industries v. NLRB, 671 F.2d 817, 822, n. 9 (4th Cir.1982), this Court stated that "[i]t is the duty of the NLRB to apply the law of the Circuit." But PPG did not address the dilemma posed by the venue provision, and thus did not, we submit, foreclose reliance upon venue considerations in a case such as the present one
 Even where there is no multiple-venue provision, we do not believe that there is any constitutional requirement or any other inflexible rule that a federal agency must apply the legal principles announced in a court of appeals decision to the administration of a statutory program, either generally or in matters arising in the particular circuit. The agency, for example, may propose, in good faith, to seek reconsideration of a legal ruling by the court of appeals, perhaps in light of intervening developments in that court, another circuit, or the Supreme Court. See United States v. Estate of Donnelly, 397 U.S. 286, 294-295, 90 S.Ct. 1033, 1038-39, 25 L.Ed.2d 312 (1970) (the United States is generally "entitled to adhere to what it believes to be the correct interpretation of a statute * * * except where bound to the contrary by a final judgment in a particular case"); United States v. Mendoza, 464 U.S. 154, 162, 104 S.Ct. 568, 573, 78 L.Ed.2d 379 (1984) (the United States is not bound by nonmutual collateral estoppel and is not required to adhere to a prior judgment "in a case involving a litigant who was not a party to the earlier litigation"); see generally 130 Cong.Rec. 25977 (1984) (appended hereto) (letter from Solicitor General Lee to Senator Dole, Chairman, Senate Finance Committee, opposing proposed amendment to Social Security Act to require the Social Security Administration to follow adverse court of appeals decision in calculating payments to beneficiaries who were not parties to the case). Of course, in many instances an agency will, as a matter of policy and comity, follow circuit precedent.