**NATIONAL TREASURY EMPLOYEES UNION, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**NATIONAL TREASURY EMPLOYEES UNION, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**No. 85–1361.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 27, 1986.

Decided Feb. 3, 1987.

As Amended Feb. 10, 1987.

Gregory O'Duden, with whom Lois G. Williams was on the brief, for petitioner.

Stevens H. Svartz, Deputy Sol., F.L.R.A., with whom Ruth E. Peters, Sol. and William R. Tobey, F.L.R.A., were on the brief, for respondent.

William J. Stone and Mark D. Roth, were on the brief for amicus curiae, American Federation of Government Employees, AFL–CIO, urging reversal.

Before ROBINSON and RUTH B. GINSBURG, Circuit Judges, and EDWARD D. RE,* Chief Judge, United States Court of International Trade.

Opinion for the Court filed by Chief Judge RE.

RE, Chief Judge:

Petitioner, the National Treasury Employees Union, seeks review of two decisions of the Federal Labor Relations Authority (FLRA), which held that the Internal Revenue Service (IRS) had no duty to bargain over union-initiated proposals made during the term of a collective-bargaining agreement. In effect, the Authority upheld the contention of the IRS that it had no duty to bargain over midterm proposals made by the union.

The question presented is whether the IRS, a federal agency, during the term of a collective-bargaining agreement, may refuse to bargain with the union over union proposals that pertain to negotiable issues not mentioned in the agreement. Since the decisions of the Authority are contrary to the intent and purpose of the governing statute, they are set aside, and the case is remanded.

This case arises under the Federal Service Labor-Management Relations Statute (FLRS), 5 U.S.C. §§ 701–7135 (1982 & Supp. II 1984), which was enacted as Title VII of the Civil Service Reform Act of 1978. The FLRS establishes a statutory framework to regulate labor relations between federal agencies and their employees. A key component of the statute is the Federal Labor Relations Authority, an independent agency, which performs a role analogous to that of the National Labor Relations Board. *See Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 92–93, 104 S.Ct. 439, 441–42, 78 L.Ed.2d 195 (1983); *Turgeon v. FLRA*, 677 F.2d 937, 939 (D.C.Cir.1982) (per curiam). The Authority, whose responsibility is to carry out the purpose of the FLRS, is to "provide leadership in establishing policies and guid-

ance relating to matters under [the statute]." 5 U.S.C. § 7105(a)(1) (1982). Among its other duties, the FLRA hears appeals pertaining to charges of unfair labor practices, including the refusal to bargain in good faith. *See* § 7105(a)(2)(A)–(I).

## FACTS

Petitioner, the National Treasury Employees Union, is the exclusive representative of employees of the IRS in its national, regional, and district offices, as well as at the Detroit Data Center and the National Computer Center. The union and the IRS entered into two separate collective-bargaining agreements covering IRS employees represented by the union. On two separate occasions, the union made written requests to bargain with the IRS over issues not addressed in the existing collective-bargaining agreements. In both instances, the IRS refused to bargain, contending that it had no duty to negotiate over union proposals in the middle of the agreements' terms. The duty to bargain midterm, the IRS asserted, arose only when the IRS, *i.e.*, the agency, proposed changes. In both cases, the union filed an unfair labor practice (ULP) charge.

In the first case, the administrative law judge found that the agency had committed a ULP because its statutory duty to bargain included midterm, union-initiated proposals. In the second case, the administrative law judge found that the delegation of certain recruitment functions from the Office of Personnel Management (OPM) to the IRS constituted a change in circumstances sufficient to create a duty to bargain.

The Authority reversed the decisions of the administrative law judge. In the first case, the union made a written request to bargain with respect to certain conditions of employment, such as the use of government cars, permission to work at home, and worksite selection. The IRS contended that it had no duty to bargain because the agency had made no changes in the areas covered by the proposals. The Authority

---

* Sitting by designation pursuant to Title 28 U.S.C. § 293(a).

held that the duty to bargain extended only to negotiations leading to a basic agreement and to midterm proposals initiated by the agency, not to midterm proposals initiated by the union. *IRS v. National Treasury Employees Union*, 17 F.L.R.A. 731, 738 (1985). The Authority found support for this position in a Senate Committee Report that accompanied a Senate bill, which, although not enacted into law, contained certain provisions that were similar to the FLRS, as enacted. *See* 17 F.L.R.A. at 735–37 (citing S.Rep. No. 969, 95th Cong., 2d Sess. 40 (1978)).

The Authority also purported to rely on the congressional mandate to interpret the statute "in a manner consistent with the requirements of an effective and efficient Government." *See* 5 U.S.C. § 7101(b). The Authority concluded that the statutory duty to bargain did not include union-initiated, midterm proposals because midterm negotiations would undermine stability, and discourage the parties from anticipating future issues at the time of the basic contract negotiations. *See* 17 F.L.R.A. at 736–37.

In the second case, the Authority also reversed the decision of the ALJ. *IRS v. National Treasury Employees Union*, 18 F.L.R.A. 361, 363 (1985). The Authority stated that the IRS would have a statutory duty to bargain only if the negotiations were directed toward a basic collective-bargaining agreement, or if the negotiations concerned a management-initiated change in employment conditions. The Authority rejected the ALJ's conclusion that a change in employment conditions had occurred as a result of the IRS assuming the recruitment duties previously performed by the OPM. Since it was undisputed that the IRS had not altered the recruitment process that it had acquired from the OPM, the Authority concluded that the IRS had committed no unfair labor practice because the IRS had no duty to bargain over the union's proposals. *See* 18 F.L.R.A. at 362–63.

## STANDARD OF REVIEW

In establishing the FLRA, Congress intended the Authority "to develop special-

ized expertise in its field of labor relations and to use that expertise to give content to the principles and goals set forth in the act." *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (*BATF*) (quoting *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 236, 83 S.Ct. 1139, 1149, 10 L.Ed.2d 308 (1963)); *see* 15 U.S.C. § 7105. Pursuant to well established principles of administrative law, it is appropriate for a reviewing court to accord due weight to an agency's interpretation of a statute that the agency has been entrusted to administer. *See, e.g., United States v. City of Fulton*, — U.S. —, 106 S.Ct. 1422, 1428, 89 L.Ed.2d 661 (1986); *Ford Motor Co. v. NLRB*, 441 U.S. 488, 496, 99 S.Ct. 1842, 1848, 60 L.Ed.2d 420 (1979). Thus, the court will defer to the agency's interpretation of the statute, if the interpretation is reasonable and consistent with the intent of the legislature, or with the guiding purpose of the statute. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). Nevertheless, as the Supreme Court has emphasized, the deference owed to an expert tribunal cannot be allowed to result in the unauthorized assumption by an agency of major policy decisions properly made by Congress. *BATF*, 464 U.S. at 97, 104 S.Ct. at 444 (quoting *American Ship Building Co. v. NLRB*, 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965)). Indeed, it may be said that deference to an agency's interpretation reflects a judicial determination that the agency's interpretation falls within the scope of the authority that has been properly delegated by Congress to the agency. *See Montana v. Clark*, 749 F.2d 740, 745 (D.C.Cir.1984), *cert. denied*, — U.S. —, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985).

Section 701 of the FLRS provides that judicial review of FLRA orders "shall be on the record in accordance with section 706" of the Administrative Procedure Act, 5 U.S.C. § 706 (1982). *See* 5 U.S.C.

§ 7123(c). The Administrative Procedure Act provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> .  .  .  .  .
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
> (A) arbitrary, capricious, an abuse or discretion, or otherwise not in accordance with law;
>
> .  .  .  .
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. . . .

Administrative Procedure Act § 10(e), 5 U.S.C. § 706 (1982).

It is axiomatic that "the starting point for interpreting a statute is the language of the statute itself." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *see Chevron U.S.A., Inc. v. National Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). Title 5 U.S.C. § 7114 provides in part:

> (a)(1) A labor organization which has been accorded exclusive recognition is the exclusive representative of the employees in the unit it represents and is entitled to act for, and negotiate collective bargaining agreements covering, all employees in the unit. . . .
>
> .  .  .  .  .
>
> (4) Any agency and any exclusive representative in any appropriate unit in the agency, through appropriate representatives, shall meet and negotiate in good faith for the purposes of arriving at a collective bargaining agreement. . . .

5 U.S.C. § 7114(a)(1), (4) (1982). The statute also provides the following definitions:

> (8) "collective bargaining agreement" means an agreement entered into as a result of collective bargaining pursuant to the provisions of this chapter;
>
> .  .  .  .  .
>
> (12) "collective bargaining" means the performance of the *mutual obligation* of the representative of an agency and the exclusive representative of employees in an appropriate unit in the agency *to meet at reasonable times and to consult and bargain in a good faith effort to reach agreement with respect to the conditions of employment affecting such employees* and to execute, *if requested by either party,* a written document incorporating any collective bargaining agreement reached, but the obligation referred to in *this paragraph does not compel either party to agree* to a proposal or to make a concession. . . .

5 U.S.C. § 7103(a)(8), (12) (1982) (emphasis added).

The statute *neither* specifies *nor* distinguishes midterm bargaining, union-initiated bargaining, and any other type of bargaining. Thus, there is no express support in the governing statute for the Authority's conclusion.

## LEGISLATIVE HISTORY

In its first decision, the Authority relied on a quotation from the Senate Report that referred to a duty to bargain "in the context of negotiations *leading to a basic collective bargaining agreement.*" 17 F.L.R.A. at 735 (emphasis in original) (quoting S.Rep. No. 969, 95th Cong., 2d Sess. 40 (1978)). This report pertains to the Senate bill that was rejected by both the House of Representatives and the Conference Committee. The provision to which the quotation refers, however, is similar to one included in the final Act. While there may be some basis for the Authority's conclusion that the Senate report distinguished between basic and midterm agreements, this distinction did not survive the rejection by Congress of the Senate's restrictive view of the rights of labor and the importance of collective bargaining.

As this Court has made clear, Title VII, as enacted, was designed to expand the scope of negotiation from its limited role under the then existing law. *See Library of Congress v. FLRA*, 699 F.2d 1280, 1283–86 (D.C.Cir.1983); *Department of Defense v. FLRA*, 659 F.2d 1140, 1154–56 (D.C.Cir. 1981), *cert. denied sub nom.* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). The adoption of the House version of the legislation represents a repudiation of the narrow view of collective bargaining that would have been codified by the Senate bill. *See National Treasury Employees Union v. FLRA*, 691 F.2d 553, 559–61 (D.C.Cir. 1982).

Since the Senate bill clearly demonstrated a more restrictive approach than the House bill, an ambiguous passage in the Senate Report cannot be regarded as reflecting the intent of Congress in enacting the House bill. Nevertheless, the existence of this distinction in the Senate Report indicates that at least some members of Congress were aware of this issue. If Congress had intended to embrace the narrow approach of the Senate on this question, it would have manifested or expressed its intention. The language of section 7114(a), however, is as broad and unqualified as the other sections of the statute, and does not reflect the restrictive view expressed in the fragment of legislative history upon which the Authority relied for support.

## PRIVATE SECTOR LAW

There is no question that Congress was fully aware of the analogy between the FLRS and the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151–168 (1982). *See BATF,* 464 U.S. at 97, 104 S.Ct. at 444; *Department of Defense v. FLRA,* 659 F.2d 1140, 1144 (D.C.Cir.1981), *cert. denied sub nom.* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). Indeed, the FLRA was modeled on the NLRB, and other provisions of Title VII are crafted either by analogy or by contrast. *Compare* 5 U.S.C. § 7102 *with* 29 U.S.C. § 157 (employees rights); 5 U.S.C. § 7116 *with* 29 U.S.C.

§ 158 (unfair labor practices); 5 U.S.C. § 7116(b)(7) *with* 29 U.S.C. § 163 (right to strike).

It is also apparent that Congress paid close attention to judicial precedent in private sector labor law when drafting the statute. The administrative practice pursuant to the 1978 Act does not provide clear guidance on midterm proposals in the public sector. *Compare Library of Congress,* 9 F.L.R.A. 427 (1982) *with Environmental Protection Agency,* 16 F.L.R.A. 602 (1984). In the private sector, however, there is clear and long-established precedent that the duty to bargain extends also to midterm proposals initiated by either management or labor, provided the proposals do not conflict with the existing agreement. This basic principle of private sector labor law was applied in *NLRB v. Jacobs Manufacturing Co.,* 196 F.2d 680, 684 (2d Cir. 1952).

In the *Jacobs Manufacturing* case, the question presented was whether management, during the term of a collective-bargaining agreement, had a duty to bargain as to matters neither discussed nor incorporated into that agreement. The union sought to have the company ordered to bargain as to subjects not covered by the agreement. The Jacobs Manufacturing Company contended that it had no duty to bargain during the term of the agreement as to subjects not covered in the agreement, since they had not been reserved for future negotiations in a reopening clause. *Id.* at 683. The NLRB concluded that there was a duty to bargain, and held that management's unwillingness to meet with labor on those issues constituted a refusal to bargain in good faith in violation of section 8 of the National Labor Relations Act. *See* 196 F.2d at 682–83. Hence, the NLRB ordered that the company bargain collectively with the union.

On the NLRB's petition for enforcement of its order, the United States Court of Appeals for the Second Circuit upheld the NLRB, and granted enforcement. The court stated that defendant's narrow interpretation of section 8(d) was inconsistent

with the general purpose of the Act, which is "to require employers to bargain as to employee demands whenever made." *Id.* at 684. Hence, the court held that the employer had a duty "to bargain as to subjects which were neither discussed nor embodied in any of the terms and conditions of the contract." *Id.* Each court of appeals that has addressed this issue has relied on the Second Circuit's analysis in the *Jacobs* case. *See, e.g., Mead Corp. v. NLRB,* 697 F.2d 1013, 1020 (11th Cir.1983); *NL Industries v. NLRB,* 536 F.2d 786, 789–90 (8th Cir.1976). Indeed, it is undisputed that the *Jacobs* case is fully integrated into the fabric of labor law.

The relevance or applicability of private sector labor law to the law of the public sector may vary with the specific issues raised. *See Library of Congress v. FLRA,* 699 F.2d 1280, 1287 (D.C.Cir.1983). In this case, the Authority identified no practical distinctions between private and governmental needs as to midterm bargaining. As this Court has explained, "[t]he lack of any prior judicial decisions under the [FLRS], especially when combined with the relative paucity of applicable legislative history, makes analogies to comparable legal developments in the private sector relevant and useful as a guide for this court's reasoning." *Library of Congress,* 699 F.2d at 1286; *see Department of Defense v. FLRA,* 659 F.2d 1140, 1144 (D.C.Cir.1981), *cert. denied sub nom.* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982).

This interpretation of the governing statute is consistent with its purposes and framework. It promotes and encourages equitable collective bargaining, and is coupled with specific restrictions to accommodate the government's unique labor relations needs. There is no doubt that private sector analogies to cases arising under the FLRA must be undertaken with care. *See Library of Congress,* 699 F.2d at 1281. Nevertheless, the well established precedent of the *Jacobs* case should have been seriously considered by the Authority.

## THE PURPOSE AND GOALS OF THE STATUTE

In enacting the FLRS, Congress determined that, "experience in both private and public employment indicates that the statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their choosing in decisions which affect them ... contributes to the effective conduct of public business." 5 U.S.C. § 7101(a)(1) (1982).

In its administrative decisions, and in its brief before this Court, the Authority urges that its position is supported by the legislative directive to interpret the statute to promote "effective and efficient government." *See* 5 U.S.C. § 7101(b) (1982). The Authority reasoned that midterm bargaining over union proposals would inject uncertainty into labor-management relations, undermine stability in the workplace, and increase the prospect for conflict. Congress, however, has already drawn the opposite conclusion, and has determined that collective bargaining contributes to stability in federal labor-management relations, and to effective and efficient government. *See* 5 U.S.C. § 7101(a).

The Authority has recognized that Congress had determined that collective bargaining contributes to stability in federal labor-management relations, and to effective government. *See IRS v. National Treasury Employees Union,* 17 F.L.R.A. 731, 735–36 (1985). More importantly, the FLRA indicated that Congress had authorized management-initiated midterm bargaining. *Id.* The FLRA's decision in this case was unreasonable because management-initiated midterm proposals would create the identical potential problems that the Authority feared would arise from union-initiated midterm proposals.

This Court has recognized the statutory "goal of equalizing the positions of labor and management at the bargaining table." *American Federation of Government Employees v. FLRA,* 750 F.2d 143, 148 (D.C.Cir.1984) (*AFGE*). As the Supreme Court emphasized in *BATF:* "In passing the Civil Service Reform Act, Congress un-

questionably intended to strengthen the position of federal unions and to make the collective-bargaining process a more effective instrument of the public interest...." 464 U.S. at 107, 104 S.Ct. at 449. Congress, of course, recognized that the special needs of government required certain protections for management in the collective-bargaining process. There is no indication, however, that the restriction on the duty to bargain imposed by the Authority in this case is an appropriate means of furthering the statutory goals. Indeed, the statutory scheme protects governmental needs, not by restricting the circumstances of bargaining, but by limiting the areas that are subject to bargaining. For example, section 7106(a) enumerates certain management rights which are not subject to bargaining. 5 U.S.C. § 7106(a) (1982). Similarly, section 7106(b) sets forth permissive bargaining areas which are subject to negotiation only if management consents. 5 U.S.C. § 7106(b) (1982). These protections operate throughout the bargaining process, without regard to whether the negotiation is local or national, a union proposal or a management proposal, or a midterm or basic agreement.

In view of the absence of any statutory distinction between midterm and basic negotiations, it is clear that Congress intended that management prerogatives be preserved through this comprehensive system of subject matter protection, rather than through implied restrictions on the collective-bargaining process. Nevertheless, the Authority asserts that a distinction must be made between midterm and other agreements because midterm bargaining would undermine reliance on the basic agreement, and encourage fragmentation of the collective-bargaining process. At the same time, the Authority has clearly announced its understanding that employee representatives must bargain over all lawful midterm proposals *by management,* not only those required by law or within the statute's explicit management rights. There is nothing inherently threatening to management prerogatives, however, in allowing midterm bargaining by the union. To allow management to retain the right to raise new issues, but to deny that right to the employees' representatives would produce an inequality in bargaining power without express statutory support or strong policy justification. To limit the right of the union in midterm bargaining would provide management with an unwarranted advantage which would violate a guiding purpose of the statute.

## CONCLUSION

In light of the clear precedent in the private sector on the specific issue presented, the express congressional intent to promote and encourage collective bargaining, and basic principles of labor law, the Court holds that the decisions of the Authority are contrary to the intent of the legislature and the guiding purpose of the statute. Therefore, since the decisions are "not in accordance with law," *see* 5 U.S.C. § 706(2)(A), they are set aside, and the case is remanded.