# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――

Argued September 15, 2004　　　　Decided March 8, 2005

No. 03-1351

NATIONAL TREASURY EMPLOYEES UNION,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

―――――

On Petition for Review of an Order of the
Federal Labor Relations Authority

―――――

*Robert H. Shriver, III* argued the cause for the petitioner. *Gregory O'Duden*, General Counsel, and *Barbara A. Atkin*, Deputy General Counsel, National Treasury Employees Union, were on brief.

*James F. Blandford*, Attorney, Federal Labor Relations Authority, argued the cause for the respondent. *David M. Smith*, Solicitor, and *William R. Tobey*, Deputy Solicitor, Federal Labor Relations Authority, were on brief.

Before: HENDERSON, RANDOLPH and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

Karen LeCraft Henderson, *Circuit Judge*: The National Treasury Employees Union (NTEU or Union) petitions for review of a decision by the Federal Labor Relations Authority (FLRA or Authority) concluding that its proposals to define the scope of the duty to bargain mid-term constitute only a permissive subject of bargaining. Because the Authority failed to adequately set forth its reasoning and also departed from precedent without sufficient explanation, we remand the case.

## I. Background

The NTEU serves as the exclusive bargaining representative of employees of the U.S. Customs Service (Service or Agency).[1] During the course of negotiations with the Agency over a new collective bargaining agreement in 2001, the NTEU made two proposals to require mid-term bargaining unless the matter at issue was "specifically addressed" by the terms of the agreement.[2] The Agency refused to bargain over the proposals.

---

[1] At the outset of this case, the Customs Service was a part of the United States Department of the Treasury. Since then, it has been incorporated into the United States Department of Homeland Security. *See* 6 U.S.C. § 203(1).

[2] The proposals differ slightly in their wording:

> Proposal 1[:] Unless it is clear that a matter at issue was specifically addressed by the parties in [sic] this Agreement or an existing Memorandum of Understanding, the subject is appropriate for mid-term bargaining.

> Proposal 2[:] The Employer recognizes that the Union in accordance with law and the terms of this Agreement has the right to ... initiate bargaining on its own and engage in mid-term bargaining over

It argued that the Union proposals involved a permissive, not mandatory, subject of bargaining under the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101–7135 (FSLMRS or Statute). The Union then filed a petition for review with the FLRA on December 13, 2001. In a decision and order dated September 25, 2003, the FLRA found the proposals negotiable only at the election of the Agency. *Nat'l Treasury Employees Union & U.S. Customs Serv*., 59 F.L.R.A. 217 (2003) (Order). It concluded that the "covered by" doctrine, which — in the absence of a collective bargaining agreement between the parties to the contrary — limits the duty to bargain mid-term to matters not (1) expressly contained or (2) inseparably bound up with subjects covered in the agreement, *see U.S. Dep't of Health & Human Serv., Soc. Sec. Admin., Baltimore, MD & Am. Fed'n of Gov't Employees*, 47 F.L.R.A. 1004, 1016–18 (1993) (*SSA*), "constitutes … a statutory right" and that therefore an agency *may*, but "cannot be required to," bargain over a proposal modifying the doctrine. Order, 59 F.L.R.A. at 220. Pursuant to section 7123(a) of the FSLMRS, the Union then petitioned this court for review.

## II. Discussion

### A.

We review orders of the FLRA in accordance with section 706 of the Administrative Procedure Act (APA). 5 U.S.C. § 7123(c). Thus, the Authority's decision will not be set aside unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

---

matters not specifically addressed in this Agreement or an existing Memorandum of Understanding.

*See Nat'l Treasury Employees Union & United States Customs Serv.,* 59 F.L.R.A. 217, 217 (2003).

The Authority is entitled to "considerable deference when … applying the general provisions of the [Statute] to the complexities of federal labor relations." *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97 (1983) (internal quotation marks omitted). We defer to the FLRA's interpretation of the FSLMRS if it is "reasonable and coherent." *Am. Fed'n of Gov't Employees v. FLRA*, 712 F.2d 640, 643 (D.C. Cir. 1983). "If an agency construes its charter erratically or inconsistently, however, little or no deference will be owed to its decisions." *Id.* at 643 n.17 (citing *Adamo Wrecking Co. v. United States*, 434 U.S. 275, 287 n.5 (1978), and *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

The duty to bargain mid-term derives from the FSLMRS's command to both labor and management to "meet and negotiate in good faith for the purposes of arriving at a collective bargaining agreement." 5 U.S.C. § 7114(a)(4). Although the text of the FSLMRS imposes no explicit obligation to bargain mid-term, we concluded in *Nat'l Treasury Employees Union v. F.L.R.A.*, 810 F.2d 295 (D.C. Cir. 1987), that mid-term bargaining is required under the Statute based on the purpose and legislative history of the Statute as well as analogous private sector precedent. *Id.* at 298–301.[3] The FLRA adopted our position, holding that an agency has a duty to bargain over mid-term proposals regarding matters not "contained in the agreement unless the union has waived its right to bargain about the subject matter involved."[4] *Internal Revenue Serv. & Nat'l*

---

[3] At least one circuit took the opposite position, finding no duty under the FSLMRS to bargain mid-term. *Soc. Sec. Admin. v. FLRA*, 956 F.2d 1280, 1288–89 (4th Cir. 1992).

[4] Whether a matter is "covered by" the agreement (and therefore exempt from any requirement to bargain mid-term) is analytically distinct from whether a party has "waived" its right to bargain mid-term over that matter. *See Dep't of the Navy v. FLRA*, 962 F.2d

*Treasury Employees Union*, 29 F.L.R.A. 162, 166 (1987). The "contained in" exception to the duty to bargain was borrowed from the private sector. *See* 29 U.S.C. § 158(d). The FLRA gradually refined its understanding of the "contained in" requirement, settling on the "covered by" test enunciated in *SSA*: parties are free from any duty to bargain mid-term over matters "expressly contained in" *or* "inseparably bound up with" a contract term. 47 F.L.R.A. at 1016–18. This approach was intended to balance the twin aims of the Statute: stability in collective bargaining agreements and promotion of collective bargaining to the broadest extent possible. *See id*. at 1018.

The issue of mid-term bargaining under the FSLMRS reached the United States Supreme Court in *Nat'l Fed'n of Fed. Employees, Local 1309 v. U.S. Dep't of Interior*, 526 U.S. 86 (1999) (*NFFE*). There the Court held that "the Statute delegates to the Federal Labor Relations Authority the legal power to determine whether the parties must engage in mid-term bargaining (or bargaining about that matter)." *Id*. at 88. It further held that "Congress delegated to the Authority the power to determine — within appropriate legal bounds — whether, when, where, and what sort of mid-term bargaining is required." *Id.* at 98–99 (internal citations omitted). On remand from the Supreme Court, the Authority iterated its earlier interpretation that "under the Statute, agencies are obligated to bargain during the term of a collective bargaining agreement on negotiable union proposals concerning matters that are not 'contained in or covered by' the term agreement, unless the

---

48, 50 (D.C. Cir. 1992) ("A *waiver* occurs when a union knowingly and voluntarily relinquishes its right to bargain over a matter; but where the matter is *covered by* a collective bargaining agreement, the union has exercised its bargaining right and the question of waiver is irrelevant.") (emphasis in original). Here, there is no issue of waiver because the Union made the proposals during end-term bargaining over a new collective bargaining agreement.

union has waived its right to bargain about the subject matter involved." *U.S. Dep't of the Interior & U.S. Geological Survey, Reston, Virginia*, 56 F.L.R.A. 45, 50 (2000) (*Interior*). Like the instant case, *Interior* involved a union proposal made during end-term negotiations over a new collective bargaining agreement. The union proposal in *Interior* required mid-term bargaining over all negotiable union proposals "not covered by the provisions of this agreement." *Interior*, 56 F.L.R.A. at 45. The Authority held the proposal to be a mandatory subject of bargaining because it "restates a statutory obligation" and "is not otherwise inconsistent with federal law or government-wide regulation." *Id*. at 50.

## B.

This case presents an issue left undecided by the FLRA in *Interior*: the negotiability of a mid-term bargaining proposal that does more than "restate[] a statutory obligation." *Id*. Under the Statute, mandatory subjects of bargaining are those that involve "conditions of employment," 5 U.S.C. § 7103(a)(12). "Conditions of employment" are broadly defined to include "personnel policies, practices, and matters … affecting working conditions." *Id*. at § 7103(a)(14). The Authority's approach mirrors that of the private sector. *See Gen. Elec. Co. & Int'l Union of Elec. Radio & Mach. Workers*, 173 N.L.R.B. 253, 257 (1968) ("[P]reliminary matters are just as much part of the process of collective bargaining as the negotiation over wages, hours, etc."), *enf'd* 412 F.2d 512 (2d Cir. 1969). *See also NLRB v. Borg-Warner Corp.*, 356 U.S. 342, 349 (1958) (parties have an "obligation … to bargain with each other in good faith with respect to 'wages, hours and other terms and conditions of employment' "). Either party may bargain to impasse over mandatory topics. *Fed. Deposit Ins. Corp. & Nat'l Treasury Employees Union*, 18 F.L.R.A. 768, 771 (1985) (*FDIC*). Permissive subjects, by contrast, are those over which the parties have no obligation to bargain, either because they do not involve

"conditions of employment" or because they involve "proposals that a party negotiate to limit a right granted to it by the Statute." *U.S. Food and Drug Admin. & Am. Fed. Gov't Employees*, 53 F.L.R.A. 1269, 1274 (1998). Permissive subjects are not bargained to impasse. *FDIC* at 771 ("Clearly, if parties are not required to bargain over permissive subjects of bargaining, it follows that parties cannot insist on bargaining to impasse with respect to such matters…."). Because the parties do not dispute that mid-term bargaining involves a condition of employment, the question is whether the "covered by" doctrine embodies a statutory right the agency cannot be required to waive and therefore the Union's proposals involve only a permissive subject of bargaining.

The Union first argues that, under FLRA precedent, the statutory right to decline mid-term bargaining extends only to matters "resolved" by the collective bargaining agreement and that the "covered by" test is simply a substitute for the parties' intent. Under the Union's theory, the only matters "resolved" by the agreement are the ones intended by the parties to be resolved. Accordingly, a proposal to delineate the scope of the duty to bargain mid-term does not affect the statutory right because it merely clarifies the parties' intentions. The NTEU relies heavily on *U.S. Customs Serv., Customs Mgt. Ct. & NTEU*, 56 F.L.R.A. 809 (2000) (*Customs*), in which the Authority held that the parties' intent is an "integral component of [the second prong] of the 'covered by' analysis to determine whether the matter sought to be bargained is inseparably bound up with and thus is plainly an aspect of a subject covered by the contract." *Id*. at 814. The Union also cites a 1997 memorandum issued by the FLRA General Counsel declaring that "the parties may agree that the contract contains the full understanding and obligation of the parties to negotiate over a specific matter during the term of the agreement." FLRA Office of Gen. Counsel Mem., The Impact of Collective Bargaining Agreements on The Duty to Bargain And The Exercise of Other

Statutory Rights, at 16 (March 5, 1997) (*reprinted in* Appendix to Brief for Petitioner).

Although the Union's view of FLRA precedent is not unreasonable, we defer to the Authority's interpretation of its own precedent. The FLRA's decision in *Customs* explains that the second prong of the "covered by" doctrine requires a review of "all the record evidence," of which the parties' intent is a "requisite component" but not the entire inquiry. *Customs*, 56 F.L.R.A. at 814. In essence, in the FLRA's view, the "covered by" test defines the scope of mid-term bargaining in a manner that may be broader or narrower than the parties' intent. In addition, the General Counsel Memorandum cited by the NTEU merely states that the parties "may agree" to define the scope of the duty to bargain mid-term, presumably including an agreement to bypass the "covered by" doctrine; it does not, however, address whether such a proposal would be a mandatory or permissive subject of bargaining. Moreover, the Union offers no statutory text, no FLRA decision and no case law to buttress its claim that the operative language governing the scope of the duty to bargain mid-term covers only "matters *resolved* through the[] agreement," Brief for Petitioner at 26 (emphasis added), as opposed to matters "'*covered by*' or '*contained in*' a collective bargaining agreement." *Dep't of the Navy, Marine Corps Logistics Base v. FLRA*, 962 F.2d 48, 53 (D.C. Cir. 1992) (emphases added). The "covered by" doctrine embodies the FLRA's long-standing interpretation of the scope of the duty to bargain mid-term under the Statute; accordingly, the Union's attempt to redefine that interpretation fails.

The Union's second argument — that even if the "covered by" test defines the scope of a statutory right, it is not a "unilateral" statutory right, and thus not subject to permissive bargaining only — has more purchase. Many provisions of the FSLMRS confer benefits and impose obligations in varying degrees on labor and management. *See, e.g.*, 5 U.S.C. § 7111 (agency must

grant exclusive recognition to elected labor organization); *id*. at § 7115 (upon request, agency must pay union dues from employee's paycheck); *id*. at § 7119 (Federal Mediation and Conciliation Services available to either party); *id*. at § 7121 (collective bargaining agreement must include grievance procedure). Not all of these provisions constitute "statutory rights" that must be waived before they are negotiable. For instance, in *Am. Fed'n of Gov't Employees v. FLRA*, 712 F.2d 640 (D.C. Cir. 1983) (*AFGE*), we held that the scope of a statutorily-defined grievance procedure was a mandatory subject of bargaining notwithstanding the fact that bargaining might displace the "standard arrangement" set forth in the Statute. *Id*. at 644. *See also U.S. Dep't of the Treasury, Internal Revenue Serv. & NTEU*, 37 F.L.R.A. 1423 (1990) (agency proposal to permit unilateral reassignment of employees a mandatory subject of bargaining despite union's statutory right to bargain over reassignment decisions).

In *AFGE* we examined the negotiability of proposals that seek to alter the statutory scheme. We noted in particular the difference between provisions that confer "unilateral rights" on one of the parties — like the rights clauses found at 5 U.S.C. §§ 7102, 7106 and 7114[5] — and a provision that "describes in neutral terms a clause that must be included in every collective bargaining agreement." *AFGE*, 712 F.2d at 646. "At a minimum," we found, "section 7106 demonstrates that Congress knew how to write a provision defining permissive subjects of

---

[5] These sections are commonly referred to as the union (§§ 7102, 7114) and management (§ 7106) rights clauses. Section 7102 sets out the right of employees to participate in a labor organization and engage in collective bargaining, while section 7114 explains the obligations of the union both to its members and to the management group with which it negotiates. Section 7106 details management's authority to, *inter alia*, make staffing and budget determinations free from bargaining.

bargaining unambiguously." *Id*. "The Act securely establishes that all 'conditions of employment' are presumed to be mandatory subjects of bargaining…." *Id*. at 649. This statement holds true "unless the Act explicitly or by unambiguous implication vests in a party an unqualified 'right.' " *Id*. at 647 n.27.

Subsequent decisions by the FLRA have adopted the reasoning of *AFGE* that limits permissive subjects of bargaining to "'unilateral rights specifically vested in one party.'" *U.S. Food & Drug Admin. & Am. Fed. Gov't Employees*, 53 F.L.R.A. 1269, 1275 (1998) (quoting *AFGE*, 712 F.2d at 646) (*FDA*). *See also Am. Fed. of Gov't Employees, Local 225 & U.S. Dep't of the Army Armament Research, Dev. and Eng'g Ctr.*, 56 F.L.R.A. 686 (employee performance rating formula falls within statutory management rights under section 7106(a)(2) and therefore a permissive subject of bargaining); *U.S. Dep't of Agric. Food Safety and Inspection Serv. & Nat'l Joint Council of Food Inspection Locals*, 22 F.L.R.A. 586, 592 (1986) (statutory right to file unfair labor practice charge under section 7118 a permissive subject of bargaining). In *FDA*, the FLRA noted that "unilateral rights may be specifically spelled out in the Statute" or "rooted in more general statutory and policy consideration [sic]." *FDA*, 53 F.L.R.A. at 1275. In order to remain consistent with *AFGE*, however, any general statutory or policy consideration giving rise to a unilateral right must be manifested in the Statute by "unambiguous implication." *AFGE*, 712 F.2d at 647 n.27.

The Authority's decision fails to address this precedent. "It is well-established in this circuit that where an agency departs from its prior cases, it must offer a reasoned explanation for its change in view." *Dep't of the Navy, Marine Corps Logistics Base v. FLRA*, 962 F.2d 48, 56 (D.C. Cir. 1992). The FLRA ignored *FDA*'s discussion (which echoed our *AFGE* holding) of unilateral rights in its treatment of the "covered by" doctrine.

Rather, the Authority merely stated that it had previously "expressly, and in [its] view correctly, held that the 'covered by' defense constitutes a right under the Statute." Order, 59 F.L.R.A. at 220 (citing *Soc. Sec. Admin. & Am Fed. Gov't Employees*, 55 F.L.R.A. 374, 377 (1999) (*SSA II*)). This approach might have sufficed had *SSA II* thoroughly addressed the precedent. *SSA II*, however, was equally conclusory in its discussion of the nature of the "covered by" doctrine. *SSA II* involved the scope of the agency's duty to bargain mid-term under the terms of a Memorandum of Understanding (MOU) ratified by the parties as part of the collective bargaining agreement. The MOU modified the scope of "covered by" in the context of a mid-term bargaining proposal. *Id*. at 376. In finding that the agency had waived the full scope of the doctrine, the FLRA, without elaboration, stated that "a statutory right, such as the refusal to bargain based on an affirmative 'covered by' defense pertaining to the parties' collective bargaining agreement, is subject to waiver." *Id*. at 377. Notwithstanding its use of the phrase "statutory right," the Authority's declaration failed to shed much light on the issue presented here. First, its unsupported reference to the "covered by" defense as a statutory right was unnecessary to the holding and is therefore dictum. Second, the Authority's statement did not address whether the "covered by" defense is a "unilateral right" within the meaning of *AFGE* and *FDA*, that is, subject only to permissive bargaining. Third, the Authority was discussing the *waiver* of a statutory right under a collective bargaining agreement, not the *negotiability* of a proposal to modify that right. As noted earlier, *supra* note 4, the waiver inquiry is not relevant in the context of end-term negotiations over a new collective bargaining agreement. Thus, the issue is not whether the Union's proposals seek a "partial[] waive[r]" of the "covered by" doctrine or whether the latter "flows from the Statute," but instead whether the "covered by" defense is a unilateral right explicitly or by

unambiguous implication conferred by the Statute. *See AFGE*, 712 F.2d at 646–47 & n.27.

## C.

The Authority's order also fails to explain (or even to discuss) the relationship between the Union proposals at issue and both FLRA and private sector precedent regarding zipper and reopener clauses. A zipper clause is a provision in a collective bargaining agreement that waives the right of either party to raise issues for bargaining during the term of the agreement, whether or not the matter was considered during initial bargaining over the agreement. *Internal Revenue Serv. & Nat'l Treasury Employees Union*, 29 F.L.R.A. 162, 166 (1987). A reopener clause specifies the conditions under which a party may seek to renegotiate a term "covered by" the agreement. *See, e.g., NLRB v. Lion Oil Co.*, 352 U.S. 282, 286 (1957) (describing reopener clause).

The Union argued before the FLRA that its proposals were "'similar to mid-term reopener and zipper clause proposals which also allow the parties to determine for themselves what matters can and cannot be negotiated during the life of the parties' term agreement.'" *See* Order, 59 F.L.R.A. at 219. The FLRA declared the Union's argument "without merit" for two reasons. *Id*. at 221. First, it characterized the Union's argument as premised on the view that the "covered by" test is a contractual rather than statutory right; a view the Authority simply "rejected." *Id*. But this one-word response fails to explain how the Authority distinguished the Union proposals from a reopener clause. Moreover, as our foregoing discussion of "statutory rights" should make clear, the issue cannot be so easily disposed of. The dispositive question is not whether the proposal involves a "statutory right" but whether that right is "unilateral." *See AFGE*, 712 F.2d at 646–47 & n.27.

13

Second, the FLRA treated its earlier cases discussing the negotiability of reopener clause proposals as "not dispositive" because "in none of those cases does the record reflect that an agency made the claim, as the Agency does here, that those proposals constituted permissive subjects of bargaining." Order, 59 F.L.R.A. at 221. The Authority, however, has often ordered an agency to bargain over a reopener proposal. *See, e.g., Am. Fed. Gov't Employees & U.S. Dep't of Energy*, 47 F.L.R.A. 470, 471–73 (1993); *Nat'l Ass'n Gov't Employees & Veterans Admin. Med. Ctr.*, 24 F.L.R.A. 147, 148–49 (1986); *Am. Fed. Gov't Employees & Fed. Deposit Ins. Co.*, 21 F.L.R.A. 870, 889–91 (1986). While these decisions do not expressly refer to a reopener provision as a mandatory subject of bargaining, they do involve the agency's refusal to bargain over a reopener proposal and the resulting issuance of a bargaining order. In *Am. Fed. Gov't Employees & Soc. Sec. Admin.*, 58 F.L.R.A. 341 (2003) (*AFGE II*), the union proposed a limited reopener clause regarding the implementation of a new computer program. *Id.* at 342. The agency refused to bargain, claiming that the proposal required the waiver of its statutory management rights under section 7106 of the Statute. *Id.* This is precisely the argument made by the Agency here, which the Authority treats as a claim that the issue is a permissive subject of bargaining. But in *AFGE II*, the Authority rejected the argument and ordered the agency to bargain. *Id.* at 342–43 (agency "failed to establish" reopener proposal "affect[ed]" its management rights under Statute). *Cf. id.* at 343 (criticizing majority for failing to acknowledge "long and consistent[]" precedent that reopener proposal constitutes mandatory bargaining subject) (Member Pope, concurring).

Additionally, although a reopener clause is a mandatory subject of bargaining in the private sector, *see McAllister Bros. & Local 333, United Marine Div. Int'l Longshoreman's Ass'n.*, 312 N.L.R.B. 1121, 1129 (1993) (citing cases), the FLRA conceded at oral argument that the implication of its opinion is

that a reopener clause would be only a permissive subject in the federal sector. Yet while the FLRA declares that it imported the "covered by" doctrine from the NLRB, it has failed to justify its departure from the NLRB's approach to reopener clauses by either identifying "practical distinctions between private and governmental needs" or offering "some evidence in the language, history, or structure of the statute suggesting that Congress intended a different result." *Am. Fed. Gov't Employees v. FLRA*, 853 F.2d 986, 992 (D.C. Cir. 1988) (internal quotation marks omitted).

The precedent regarding the negotiability of a zipper clause is not as well established as that for the reopener clause. In one of the few cases involving a *proposed* zipper clause, rather than the implementation of a negotiated zipper clause, the parties seemed to assume that a zipper clause is a permissive subject of bargaining. *Am. Fed. Gov't Employees & Dep't of the Navy*, 44 F.L.R.A. 543, 546 (1992) ("The Agency conceded before the Arbitrator [with respect to zipper clause] that a party may not insist to impasse on a permissive subject of bargaining."). *Id*. at 548 (according to union the "disagreement [was over] a permissive subject for bargaining — the union's refusal to agree [to] zipper language"). While two members of this court have expressed their opinion that bargaining over a zipper clause may be mandatory, neither the FLRA nor our court has squarely addressed this issue. *See FLRA v. Internal Revenue Serv.*, 838 F.2d 567 (D.C. Cir. 1988) (Edwards, J. and Silberman, J., concurring in denial of reh'g) (disputing that FLRA precedent established zipper clause as permissive subject of bargaining); *See also Interior*, 56 F.L.R.A. at 54 (declining to address negotiability of zipper clause). In the private sector, the precedent is also not clearly established. Only the Ninth Circuit appears to have decided the question, concluding that the zipper clause is a mandatory subject of bargaining. *NLRB v. Tomco Communications, Inc.*, 567 F.2d 871, 879 (9th Cir. 1978).

The Authority omits any discussion of the relationship between a zipper clause and the Union's proposals. In some respects, the Union's proposals are arguably more analogous to zipper clauses than they are to reopeners. While a reopener clause is ordinarily limited to particular contractual provisions and by certain triggering circumstances, a zipper clause, like the Union proposals, alters the scope of the duty to bargain mid-term with respect to virtually all contract terms (or, in the case of the Union proposals, all terms not resolved by the agreement). In *Interior*, the Authority expressed its intent to wait to determine the negotiability of a zipper clause until the issue is "squarely presented." *Interior*, 56 F.L.R.A. at 54. While this case may not present the issue as squarely as the Authority might like, its short-shrift dismissal of the Union's arguments regarding the relationship between its proposals and a zipper clause provides us once again with little basis upon which to uphold the Authority's decision.

For the foregoing reasons, we remand the case to the Authority for further proceedings consistent with this opinion.

*So ordered*.