# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 6, 2011          Decided August 12, 2011

No. 10-1282

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
CUSTOMS AND BORDER PROTECTION,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

NATIONAL TREASURY EMPLOYEES UNION,
INTERVENOR

———

On Petition for Review of a Final Decision
of the Federal Labor Relations Authority

———

*Howard S. Scher*, Attorney, U.S. Department of Justice, argued the cause for petitioner. With him on the briefs were *Tony West*, Assistant Attorney General, and *William Kanter*, Attorney.

*Rosa M. Koppel*, Solicitor, Federal Labor Relations Authority, argued the cause and filed the brief for respondent. *Joyce G. Friedman*, Attorney Advisor, entered an appearance.

*Larry J. Adkins* argued the cause for intervenor. With him on the brief was *Gregory O'Duden*.

Before: ROGERS, TATEL, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: U.S. Customs and Border Protection (CBP), a division of the Department of Homeland Security, changed local work assignments for its inspectors without first negotiating with their union. An arbitrator concluded that this was an unfair labor practice, and the Federal Labor Relations Authority agreed. For the reasons set forth below, we deny CBP's petition for review.

I

The National Treasury Employees Union represents CBP inspectors nationwide. In 1995, CBP and the Union negotiated a nationwide agreement for how work assignments would be made. This agreement, called the National Inspectional Assignment Policy (NIAP), required bargaining at the local level over subjects such as workweek length, work hours, scheduling, staffing levels, and days off.

On August 2, 2001, CBP sent the Union a revised NIAP (RNIAP) that gave the agency greater flexibility in setting work assignments and terminated its obligation to bargain with the Union at the local level. For example, whereas the NIAP authorized CBP to change workweek length only if local Union leaders agreed the change was "warranted" in light of specified criteria, NIAP § 5(A)(1)(a), the RNIAP provided that workweek length "may be changed" by CBP managers "as required to meet operational needs," RNIAP § 5(A)(1)(a). Similarly, in contrast to the NIAP's requirement that CBP managers schedule employee days off "in accordance with locally negotiated agreements based on any one or more of [five named] criteria," NIAP § 5(A)(1)(c), the RNIAP directed managers to schedule days off "in

accordance with" unspecified "operational requirements," RNIAP § 5(A)(1)(c). CBP announced that it would begin following the RNIAP on September 30, 2001, and invited the Union to bargain over the revised policy.

On August 6, 2001, the Union proposed combining negotiations over the RNIAP with the renegotiation of a collective bargaining agreement that had expired in 1999. One month later, on September 6, CBP declined the Union's proposal and warned that any delay in implementing the RNIAP would be "unacceptable." *Nat'l Treasury Emps. Union v. Fed. Labor Relations Auth.* (*NTEU v. FLRA II*), 414 F.3d 50, 54 (D.C. Cir. 2005). Believing the parties were at an impasse over the proposal to negotiate the RNIAP and the collective bargaining agreement at the same time, the Union turned to the Federal Mediation and Conciliation Service, an independent agency that mediates labor disputes. *See* 29 U.S.C. § 172. When mediation proved unsuccessful, the Union requested help from the Federal Service Impasses Panel, which has authority to resolve bargaining disputes between unions and federal agencies. *See* 5 U.S.C. § 7119. The Panel, however, declined to exercise jurisdiction, and CBP replaced the NIAP with the RNIAP.

The Union challenged CBP's action before the Federal Labor Relations Authority. In a February 2004 decision, the Authority held that CBP could lawfully proceed under the RNIAP and had no obligation to bargain over the Union's proposal to combine negotiations over the RNIAP and a new collective bargaining agreement. *U.S. Dep't of the Treasury, Customs Serv., Wash., D.C.*, 59 F.L.R.A. 703, 711 (2004), *enforced*, *NTEU v. FLRA II*, 414 F.3d 50.[1] The Authority did

---

[1] In a subsequent decision, the Authority also held that the RNIAP lawfully terminated CBP's obligation under the NIAP to bargain with the Union at the local level. *NTEU, Chapter 143*, 60

not, however, wholly excuse CBP from bargaining over the RNIAP. Although the agency did not have to bargain over its decision to replace the NIAP with the RNIAP or over the proposal to combine negotiations, it *did* have to bargain over the "procedures [it] would observe in implementing the [RNIAP]" and over "appropriate arrangements for employees adversely affected by [its] decision to implement the [RNIAP]." *Id.* (citing 5 U.S.C. § 7106(b)(2), (3)). This case involves those procedures and arrangements.

Pursuant to the RNIAP, in late 2004 and early 2005 CBP unilaterally changed various work assignment policies. For example, the agency eliminated the seven-day workweek at the Port of Seattle, changed the overtime excusal policy at the Port of Miami, and implemented a new overtime eligibility rule at Los Angeles International Airport. The Union filed a grievance with CBP on May 5, 2005, alleging that the agency had committed an unfair labor practice by failing to provide the Union an opportunity to bargain over the changes. CBP denied the grievance, and the Union invoked arbitration. *See* 5 U.S.C. § 7121. The arbitrator sided with the Union, the Authority affirmed the arbitrator's award, and CBP now petitions for review. We take jurisdiction under 5 U.S.C. § 7123(a).

II

CBP urges us to vacate the Authority's decision on two separate grounds, which we consider in turn. We must uphold the Authority's decision unless it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also FDIC v. FLRA*, 977 F.2d 1493, 1496 (D.C. Cir. 1992). We afford the Authority

---

F.L.R.A. 922, 927-28 (2005), *enforced*, *NTEU v. FLRA* (*NTEU v. FLRA IV*), 453 F.3d 506 (D.C. Cir. 2006).

"considerable deference when . . . applying the general provisions of the [Federal Service Labor-Management Relations Statute (FSLMRS)] to the complexities of federal labor relations," *NTEU v. FLRA* (*NTEU v. FLRA I*), 399 F.3d 334, 337 (D.C. Cir. 2005) (quoting *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97 (1983)) (internal quotation marks omitted), and "defer to the [Authority's] interpretation of the FSLMRS if it is 'reasonable and coherent,'" *id.* (quoting *Am. Fed'n of Gov't Emps. v. FLRA*, 712 F.2d 640, 643 (D.C. Cir. 1983)).

A

CBP first argues that it had no duty to bargain over the disputed changes in work assignment policies because the changes were "covered by" the RNIAP. Under the "covered by" doctrine, "[i]f a collective bargaining agreement 'covers' a particular subject, then the parties to that agreement 'are absolved of any further duty to bargain about that matter during the term of the agreement.'" *Fed. Bureau of Prisons v. FLRA*, No. 10-1089, slip op. at 6 (D.C. Cir. July 8, 2011) (quoting *Dep't of the Navy, Marine Corps Logistics Base, Albany, Ga. v. FLRA*, 962 F.2d 48, 53 (D.C. Cir. 1992)). In other words, during the term of a collective bargaining agreement, "an agency may act unilaterally" with regard to any matter "contained in or covered by" the agreement. *EEOC, Wash., D.C.*, 52 F.L.R.A. 459, 460 (1996); *see also NTEU v. FLRA* (*NTEU v. FLRA III*), 452 F.3d 793, 796 (D.C. Cir. 2006) ("[B]argaining is not required . . . with respect to a matter 'covered by' a collective bargaining agreement already in place."); *U.S. Dep't of Health & Human Servs., Soc. Sec. Admin., Balt., Md.*, 47 F.L.R.A. 1004, 1017-18 (1993) ("[U]pon execution of an agreement, an agency should be free from a requirement to continue negotiations over terms and

conditions of employment already resolved by the previous bargaining . . . .").

There is a significant flaw in CBP's argument. As our recitation of the "covered by" doctrine makes clear, and as the Authority explained below, *see U.S. Dep't of Homeland Sec., Customs & Border Prot.*, 64 F.L.R.A. 989, 995 (2010), the doctrine applies only to collective bargaining agreements, and the Authority has previously held that the RNIAP is not such an agreement, *see NTEU, Chapter 137*, 60 F.L.R.A. 483, 487 (2004); *see also NTEU, Chapter 143*, 60 F.L.R.A 922, 929-30 (2005). CBP protests that the Authority has never provided a "reasonable and coherent" explanation why it isn't, but we disagree.

The FSLMRS defines "collective bargaining agreement" as "an agreement entered into as a result of collective bargaining pursuant to the provisions of [the FSLMRS]." 5 U.S.C. § 7103(a)(8). In *NTEU, Chapter 137*, the Authority explained that the RNIAP does not fit that definition because it is neither part of nor subject to a national agreement between CBP and the Union. 60 F.L.R.A. at 487. Although terse, this explanation is reasonable. By definition a collective bargaining agreement requires that there be an *agreement*. The RNIAP, however, does not represent any sort of agreement between CBP and the Union. It was unilaterally imposed by CBP and replaced an earlier bargain the parties had struck.[2]

---

[2] The Authority also found that the RNIAP is not a collective bargaining agreement because "it has no term provision." *NTEU, Chapter 137*, 60 F.L.R.A. at 487. We need not consider the adequacy of this second rationale because the Authority's explanation was reasonable without it. *See BDPCS, Inc. v. FCC*, 351 F.3d 1177, 1183 (D.C. Cir. 2003) ("When an agency offers

CBP acknowledges that the RNIAP is neither part of nor subject to an express agreement between the parties, but argues that under Authority precedent a collective bargaining agreement may be formed even absent express assent. For example, where two parties reach an impasse in bargaining and one invokes the assistance of the Impasses Panel, "any agreement, mandated or otherwise, resulting therefrom is a part of the [parties'] collective bargaining agreement." *U.S. Dep't of Labor, Wash., D.C.*, 60 F.L.R.A. 68, 71 (2004) (quoting *Interpretation & Guidance*, 15 F.L.R.A. 564, 567 (1984)) (internal quotation mark omitted). Or, where a union "fails to request bargaining within a reasonable period of time after being notified of proposed changes, fails to submit bargaining proposals within a contractual or other agreed upon time limit, fails to bargain, or fails to timely invoke the services of the [Impasses] Panel," the union "is considered to have consented to [the] proposed changes," which then become part of the parties' agreement. *Id.* at 70-71. Thus, in *Department of Labor, Washington*, the Authority found that an agency proposal became part of a collective bargaining agreement when the union neither responded to the proposal nor sought assistance from the Impasses Panel. *See id.* at 68, 71-72.

The Authority, however, reasonably rejected CBP's attempted analogy to *Department of Labor, Washington*, because here "the union evidenced no intent to abandon its rights." Resp't's Br. 24. Unlike in that case, the Union asked the Impasses Panel to intervene. That the Panel declined the Union's request is irrelevant. Nor is this a case where the union failed to seek bargaining or submit any proposals

multiple grounds for a decision, we will affirm the agency so long as any one of the grounds is valid, unless it is demonstrated that the agency would not have acted on that basis if the alternative grounds were unavailable.").

during the negotiation period. To the contrary, the Union has fought the RNIAP tooth and nail from the beginning.

Given the differences between this case and those on which CBP relies, the Authority's explanation for why the RNIAP is not a collective bargaining agreement was adequate. The Authority was not required to canvas the field to explain why inapplicable cases or doctrines do not apply. Our precedents do not require agencies to explain why apples are not oranges. We defer to the Authority's reasonable determination that the RNIAP is not a collective bargaining agreement subject to the "covered by" doctrine.

B

CBP contends in the alternative that it had no duty to bargain over the changes it made pursuant to the RNIAP because they did not alter inspectors' "conditions of employment." Under the FSLMRS, federal employees have the right "to engage in collective bargaining with respect to conditions of employment through" union representatives. 5 U.S.C. § 7102(2). "Conditions of employment" are "personnel policies, practices, and matters" that "affect[] working conditions." *Id.* § 7103(a)(14). CBP argues that this statutory language supports a legally significant distinction between "conditions of employment," which it says are the governing policies and procedures an agency follows when changing an employee's work assignments, and "working conditions," which it says are the more narrow day-to-day circumstances of a particular job. *See Dep't of Def. Dependents Schs. v. FLRA*, 863 F.2d 988, 990 (D.C. Cir. 1988) ("The term 'working conditions' ordinarily calls to mind the day-to-day circumstances under which an employee performs his or her job."), *vacated on other grounds*, 911 F.2d 743 (D.C. Cir. 1990) (en banc) (per curiam); *see also*

Pet'r's Br. 32 (arguing that work hours, rotations, and days off are examples of "working conditions"). According to CBP, although an agency must bargain when it alters a governing policy or "condition of employment," it need not bargain when making small-scale changes in working conditions. *See U.S. Dep't of Labor, OSHA, Region I, Boston, Mass.* (*Dep't of Labor, Boston*), 58 F.L.R.A. 213, 217 (2002) (Cabaniss, Chairman, concurring) ("Our precedent, in its discussion of the statutory duty to bargain, focuses on whether there has been a change to 'conditions of employment' and not whether 'working conditions' have been changed."); *see also U.S. Dep't of the Air Force, Headquarters, 96 Air Base Wing, Eglin Air Force Base, Fla.* (*Dep't of the Air Force, Fla.*), 58 F.L.R.A. 626, 626 (2003) (Cabaniss, Chairman, concurring) ("As there was no change here to the underlying personnel policy, practice, or matter affecting what work assignments [the employees] had to do, there was no change to bargain over, even though . . . the [employees'] . . . 'working conditions'[] had been changed."). CBP contends that the adjustments it made in this case to work schedules and overtime eligibility were localized changes to particular inspectors' working conditions and that only a change to the terms of the RNIAP itself—the governing assignment policy or "condition of employment"— would trigger a duty to bargain.

The Authority reasonably rejected CBP's argument. To begin with, the Authority has previously held that there is "no substantive difference between 'conditions of employment' and 'working conditions' as those terms are practically applied." *U.S. Dep't of Homeland Sec.*, 64 F.L.R.A. at 995 (quoting *U.S. Dep't of the Air Force, 335th MSG/CC, Davis-Monthan Air Force Base, Ariz.* (*Dep't of the Air Force, Ariz.*), 64 F.L.R.A. 85, 90 (2009)) (internal quotation mark omitted). We think this conclusion is reasonable, given that both courts

and the Authority "have accorded [working conditions] a broad interpretation that encapsulates a wide range of subjects that is effectively synonymous with 'conditions of employment.'" *Dep't of the Air Force, Ariz.*, 64 F.L.R.A. at 90; *see, e.g.*, *Fort Stewart Schs. v. FLRA*, 495 U.S. 641, 645 (1990) ("[T]he term 'working conditions' [as defined in the FSLMRS] more naturally refers . . . to the 'circumstances' or 'state of affairs' attendant to one's performance of a job."); *Antilles Consol. Educ. Ass'n*, 22 F.L.R.A. 235, 237 (1986) (stating that, in examining whether a proposal affects "working conditions," the Authority looks to the "work situation or employment relationship" of employees).

Moreover, CBP's actions in this case easily satisfy the Authority's two-pronged test for whether a matter concerns a condition of employment over which an agency must bargain: "(1) Whether the matter . . . pertains to bargaining unit employees; and (2) [t]he nature and extent of the effect of the matter . . . on working conditions of those employees." *Antilles Consol. Educ. Ass'n*, 22 F.L.R.A. at 236-37. The changes CBP made to work schedules, overtime policies, and other matters "pertain[ed] to bargaining unit employees," and also had a significant "effect" on inspectors' working conditions. *Cf. Dep't of Labor, Boston*, 58 F.L.R.A. at 216 (Cabaniss, Chairman, concurring) (explaining that "an employee's work starting and stopping times" are "working conditions").

Finally, CBP asserts that the Authority's conclusion conflicts with case law holding that an agency does not alter conditions of employment when it applies an existing personnel policy in a way that affects an employee's work assignments. For example, in *Department of Labor, Boston*, an agency employee voluntarily transferred from a position that authorized use of an agency vehicle to a position that did

not. *See id.* at 213-14. The Authority held that the agency's refusal to allow the employee to continue using the vehicle did not change her conditions of employment. *See id.* at 216. Similarly, in *U.S. Immigration & Naturalization Service, Houston District, Houston, Texas* (*INS, Houston*), 50 F.L.R.A. 140 (1995), the Authority determined that reassigning inspectors to a different shift that had been used for many years did not change their conditions of employment, because the agency "as a routine matter . . . assign[ed] and reassign[ed] inspectors to different shifts based on anticipated workload requirements," *see id.* at 144; *see also U.S. Dep't of Homeland Sec., Border & Transp. Sec. Directorate, U.S. Customs & Border Prot., Border Patrol, Tucson Sector, Tucson, Ariz.*, 60 F.L.R.A. 169, 174 (2004) (finding that CBP decision that increased workload at particular station did not change inspectors' conditions of employment, because decision did not alter "the 'type' of aliens that were being processed, the type of work that [station] employees performed, or, in any manner, the processing of alien apprehensions"); *Dep't of the Air Force, Fla.*, 58 F.L.R.A. at 626, 629 (upholding arbitrator finding that where agency had "an established practice of modifying work assignments in response to mission and workload functions," a decision resulting in employees spending less time on their own aircraft and more time on other aircraft was "merely a variation of existing assignment practices, not a bargainable change in conditions of employment").

CBP argues that, like the agencies in those cases, it had no duty to bargain over the disputed work assignment changes in this case because it was merely applying existing policies (as set forth in the RNIAP). But as the Authority explained, the cases CBP cites are inapposite because they all "concern[ed] an agency's application of an existing, established practice." *U.S. Dep't of Homeland Sec.*, 64

F.L.R.A. at 994 n.11. Here, by contrast, although CBP "followed" the RNIAP, it did so to *change* rather than apply established practices. In Seattle, the agency revoked the seven-day work week; in Miami and Los Angeles, it changed the overtime policy. These were *new* assignment practices, changes from CBP's previous way of doing things.

Moreover, the practices at issue in the cases CBP cites were much narrower in scope than the RNIAP. For example, in *Department of Labor, Boston*, the established "practice" was to provide agency vehicles only for certain positions. In *INS, Houston*, it was to reassign employees among existing shifts based on anticipated workloads. Here, by contrast, the established "policy" was to unilaterally set work hours, workweek length, days off, staff levels, job duties, work locations, overtime eligibility, and more, with the sole requirement that they be set in accordance with "operational requirements" or "operational needs." *See* RNIAP § 5. Were we to take the view CBP urges, the agency would be free to make significant changes to all sorts of work assignment practices without ever involving the Union. None of the cases upon which CBP relies sweeps so broadly. The Authority reasonably concluded that those cases do not govern the dispute here and adequately explained that conclusion in its decision below.

### III

The petition for review is

*Denied.*